# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

SELDALE MOON,
    *Plaintiff*,

v.                        No. 3:18-cv-1542 (JAM)

BLACKMAN *et al.*,
    *Defendants*.

## INITIAL REVIEW ORDER

Plaintiff Seldale Moon is a prisoner of the Connecticut Department of Correction. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983. Moon alleges that prison officials failed to protect him from a serious risk of harm by general population inmates when he was in protective custody status. Based on my initial review, I conclude that Moon has stated a plausible Fourteenth Amendment claim for deliberate indifference to safety, and the complaint should be served on defendants in their individual capacities.

### BACKGROUND

Moon names the following defendants: Lieutenant Papoosha, Correctional Treatment Unit (CTU) Officer Blackman, CTU Officer Negron, Lieutenant Cox, and Correctional Officer Milling. The following allegations from Moon's complaint are assumed to be true solely for purposes of this initial ruling. On September 5, 2017, Moon submitted a request to Lieutenant Papoosha regarding his transportation from Bridgeport Correctional Center to a court proceeding on September 20, 2017. Doc. #1 at 6. In the request, Moon reminded Papoosha that he was a protective custody inmate and could not be transported with general population inmates due to safety and security concerns. *Ibid.* Moon received no response from Papoosha. *Ibid.*

1

On September 20, 2017, Officer Milling escorted Moon to the arrival and processing area to be transported to court. *Ibid.* When Moon learned that he would be transported with general population inmates, he asked to speak to a mental health worker. *Ibid.* Milling indicated there were no mental health professionals available and refused to call for one. *Ibid.*

A short time later, CTU Blackman arrived. *Id.* at 7. He announced Moon's protective custody status to the general population inmates in the area and asked Moon to state his name and inmate number out loud. *Ibid.* Moon noticed that all the general population inmates in the area turned to look at him. *Ibid.* Moon stated that he would not get on the van until he was able to speak to a lieutenant or shift commander and a mental health worker. *Ibid.* Blackman called Moon derogatory names, while CTU Officer Negron and other inmates in the area laughed at Moon. *Ibid.* Blackman informed Moon that if he refused to board the van, he would receive two disciplinary reports. *Ibid.*

Moon complied and was shackled, loaded, and buckled into the front passenger seat of the van. *Ibid.* The general population inmates in the back of the van did not have seatbelts on. *Ibid.*

As soon as officers closed the door of the van, the general population inmates began to threaten Moon and call him derogatory names, such as a protective custody "snitch" or a rapist. *Ibid.* Inmate Rinaldi, who was also confined in the van, spit on the back of Moon's neck and the side of Moon's face. *Ibid.* Moon screamed for assistance from two correctional treatment unit officers, but they ignored him. *Ibid.*

Rinaldi then leaned over the passenger seat and threatened to physically harm Moon and continued to spit on him. *Ibid.* Moon felt he had no choice but to defend himself, and he bit

2

Rinaldi. *Id.* at 8.

In response to this conduct, Blackman entered the van, verbally threatened Moon, removed him from the van, and escorted him back to the arrival and processing area. *Ibid.* Lieutenant Cox was present in the arrival and processing area and informed Moon that "if [he] wasn't so much of a PC Bitch [he] wouldn't be scared to be around General Population inmates." *Ibid.* After Moon reminded him that protective custody inmates are to be kept separate from general population inmates, Cox announced that "in order to [p]rotect our asses, we are pressing outside charges against you." *Ibid.* Moon asked to press charges for being assaulted and spit upon, but Cox refused to assist Moon with the request. *Ibid.* Cox instructed Milling to place Moon in a cell in the arrival and processing room. *Ibid.*

Prison officials did not provide Moon with medical treatment. *Ibid.* An hour later, an officer escorted Moon to an office and a Connecticut State Trooper formally charged Moon in connection with the incident in the prison van. *Ibid.* Moon informed the State Trooper that he sought to press assault charges against Rinaldi. *Ibid.* Cox and Blackman informed the State Trooper that it would be impossible to prove that Rinaldi spit on Moon. The State Trooper chose not to recommend that an assault charge be filed against Rinaldi. *Ibid.* After the State Trooper left, an officer removed Moon's shackles, and a mental health worker examined him. *Ibid.* Moon was then placed in a cell in the segregation unit. *Ibid.* Moon claims that he suffered "physical assault and [m]ental anguish" from the incident. *Id.* at 9.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or actors and "identify cognizable claims or dismiss the complaint,

or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." The complaint of a prisoner proceeding *pro se* "must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citations omitted); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Sovereign immunity*

Moon has sued the defendants in their individual and official capacities for monetary damages. Any claim for monetary damages against the defendants in their official capacities is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (holding that Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacity); *Quern v. Jordan*, 440 U.S. 332, 341-42 (1979) (concluding that § 1983 does not override a state's sovereign immunity). All claims for

4

money damages against the defendants in their official capacities are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

### *Deliberate indifference to safety*

Moon alleges that the defendants failed to protect him from a serious risk of harm by general population inmates during his confinement in the prison transport van. Prison officials have a duty to take reasonable measures to protect the safety of inmates and to protect prisoners from violence at the hands of other prisoners. *See Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994).

As an initial matter, Connecticut Superior Court records reflect that Moon was a pretrial detainee on the date of the alleged incident in the prison van.[1] Claims of pretrial detainees involving deliberate indifference to unsafe conditions of confinement are considered under the general Due Process Clause of the Fourteenth Amendment rather than under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 29-34 & n.9 (2d Cir. 2017). *Darnell*'s holding applies with equal measure to failure-to-protect claims. *See id.* at 33 n.9 (noting that the Second Circuit's interpretation of "deliberate indifference" applied to any pretrial detainee claim of deliberate indifference to a serious threat to health or safety – "such as . . . the failure-to-protect" – because "deliberate indifference means

---

[1] The State of Connecticut's Judicial Branch website reflects that on October 19, 2017, in the Connecticut Superior Court for the Judicial District of New Haven, a judge sentenced Moon to five years of imprisonment pursuant to Moon's plea of guilty to one count of assault in the second degree with a firearm in violation of Connecticut General Statutes § 53a-60a. On October 25, 2017, in the Connecticut Superior Court for the Judicial District of Bridgeport, a judge sentenced Moon to one year of imprisonment pursuant to Moon's plea of guilty to one count of assault in the third degree in violation of Connecticut General Statutes § 53a-61. Information regarding both convictions and sentences may be found at: http://www.jud.ct.gov/jud2.htm under Superior Court Case Look-up; Criminal/Motor Vehicle; Convictions – Search by Docket Number – using the following docket numbers: NNH-CR15-0284503-T and F02B-CR17-0298710-S (Last visited on April 24, 2019).

the same thing for each type of claim under the Fourteenth Amendment."). Thus, the Court reviews Moon's claims under the Fourteenth Amendment standard enunciated in *Darnell*.

To allege a claim for deliberate indifference to safety, a pretrial detainee must satisfy a two-prong test. Under the first prong, a detainee must allege that objectively the challenged "conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted). Under the second prong, the pretrial detainee must assert that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35.

As to the first prong, Moon has alleged that he was confined in a prison transport van with general population inmates. Given his protective-custody status, which had been exposed to the general population inmates in the arrival and processing area, this method of transport posed a substantial risk of harm to Moon's physical safety. After being confined in the van, a general population inmate spit on Moon, leaned over Moon's seat, and threatened to physically harm him. Moon alleges that Rinaldi physically assaulted him and that the circumstances caused him to suffer emotional distress. Moon has sufficiently alleged that the conditions posed an unreasonable risk of serious damage to his health.

Turning to the second prong, Moon alleges that each defendant was aware of his protective custody status that requires him to be transported separately due to concerns for his safety, and that the defendants either intentionally required him to travel with general population

6

inmates or failed to act with reasonable care to mitigate the risk that his being in the van posed. Liability under § 1983 requires the personal involvement of each individual held liable. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014). Moon asserts that he wrote Papoosha requesting direct or solitary transport to court given his protective-custody status, but never received a response. Moon alleges that he asked Milling to call a mental health professional when he learned he would not receive such transport, and that Milling refused to do so. Moon states that Blackman, in the presence of Negron, made the general population inmates who were to be transported in the same van aware that Moon was a protective-custody-status inmate. Negron and Blackman forced Moon to sit in the transport van with general population inmates despite knowing that he should be transported separately. After Blackman removed Moon from the van following the alleged assault and escorted him back to the arrival and processing area, Cox learned about the incident but took no action to remedy it. All these allegations are sufficient for initial pleading purposes to satisfy the second prong of the test for deliberate indifference.

### *Request to press criminal charges*

Moon alleges that he sought to press charges against Rinaldi for spitting on him. Moon claims that Cox and Blackman informed a State Trooper that it could not be proved that Rinaldi spit on Moon. The State Trooper chose not to recommend that charges be brought against Rinaldi but did recommend that Moon be charged.

A victim of allegedly criminal conduct is not entitled to a criminal investigation or the prosecution of the alleged perpetrator of the crime. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable

7

interest in the prosecution or nonprosecution of another"); *Groomes v. Frazir*, 2017 WL 7410991, at *5 (D. Conn. 2017) ("The law is clear that inmates do not enjoy a constitutional right to an investigation of any kind by government officials. Nor is a victim of allegedly criminal conduct entitled to a criminal investigation or the prosecution of the alleged perpetrator of the crime.") (internal quotations and citations omitted), *reconsideration denied*, 2018 WL 745954 (D. Conn. 2018). Thus, the fact that Cox and Blackman may have influenced the decision of the State Trooper not to recommend criminal charges against Rinaldi does not establish a constitutional violation. Moon's claim for denying his request to press charges is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## CONCLUSION

The Fourteenth Amendment deliberate indifference to safety claim against all defendants in their official capacities is DISMISSED as barred by the Eleventh Amendment pursuant to 28 U.S.C. § 1915A(b)(2). The Fourteenth Amendment deliberate indifference to safety claim against all defendants in their individual capacities shall proceed. The claim that Lieutenant Cox, CTU Blackman, and the Connecticut State Trooper refused to permit Moon to press criminal charges against Inmate Rinaldi is DISMISSED for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915A(b)(1).

The Court enters the following orders:

(1)  **The Clerk shall** verify the current work addresses of Correctional Treatment Unit Officer Blackman, Correctional Treatment Unit Officer Negron, Lieutenant Papoosha, Lieutenant Cox, and Correctional Officer Milling with the Department of Correction Office of Legal Affairs mail a waiver of service of process request packet, containing the Complaint,

Amended Complaint, and this Order, to each defendant at the address provided by **May 15, 2019**, and report to the Court on the status of those waiver requests on the thirty-fifth day after mailing. If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     **The Clerk shall** send plaintiff a copy of this Order.

(3)     **The Clerk shall** send a courtesy copy of the Complaint, Amended Complaint, and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)     The defendants shall file their response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)     Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **November 20, 2019**. Discovery requests need not be filed with the Court.

(6)     All motions for summary judgment shall be filed by **December 20, 2019**.

(7)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)     If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the Court. Failure to do so can result in

the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the Court. As local court rules provide that discovery requests are not filed with the Court, discovery requests must be served on defendants' counsel by regular mail.

**SO ORDERED** this 24th day of April 2019 at New Haven, Connecticut.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge